**Whitney Stark**, OSB No. 090350
whitney@albiesstark.com
ALBIES & STARK
1500 SW First Ave., Suite 1000
Portland, Oregon 97201
Telephone: (503) 308-4770

**Attorneys for Plaintiff**

[*Additional Counsel on Signature Page*]

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PAUL YAMASHITA, on behalf of himself and all others similarly situated,<br><br>                            Plaintiff,<br><br>        v.<br><br>WEX, INC.,<br><br>                            Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff, Paul Yamashita ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant WEX, Inc., and alleges the following based on personal knowledge as to himself, and as to all other matters, upon information and belief, including investigation conducted by his counsel:

**PRELIMINARY STATEMENT**

1.      This is a proposed class action seeking monetary damages, restitution and public injunctive and declaratory relief from Defendant WEX, Inc. ("Defendant" or "WEX"), which includes a division called WEX Health (also referred to herein as "WEX," or "Defendant"). WEX

is a third-party administrator that allows companies to outsource their benefits administration for Consolidated Omnibus Budget Reconciliation Act ("COBRA") coverage, Flexible Spending Accounts ("FSA(s)") and Health Savings Accounts ("HSA(s)"). ("COBRA," "FSA" and "HSA" benefits are referred collectively herein as "Health Care Benefit(s)").

2.      COBRA is a federal law that allows workers and their family members to temporarily continue their group health coverage for a limited period of time after losing their health coverage due to certain qualifying and often challenging life events, such as job termination, reduced hours, death of the covered employee, divorce or legal separation.

3.      Detailed further herein, FSAs and HSAs are tax-advantaged accounts that allow employees to save money for eligible medical expenses. If an individual experiences a qualifying event and is eligible for COBRA, they may also continue contributing funds to their FSA and HSA, although without the tax advantage. WEX administers FSAs and HSAs for individuals who have also enrolled in COBRA.

4.      This action concerns the unlawful, unfair and deceptive assessment of a uniform $20.00 junk fee that WEX charges to individuals whose pay for their Health Care Benefits through WEX's online payment portal.

5.      Plaintiff seeks damages and, among other remedies, public injunctive relief, as described in more detail below.

## PARTIES

6.      Plaintiff Paul Yamashita resides in Portland, Oregon and is a citizen of the state of Oregon. While Plaintiff Yamashita was enrolled in COBRA, which his former employer paid for, he continued making payments on his FSA through WEX's online payment portal. Plaintiff Yamashita incurred a $20.00 junk fee when making a payment with WEX for his FSA.

7.     Defendant WEX is a Delaware corporation that operates as a health benefits administrator and offers a platform for consumers who are enrolled in COBRA to also manage and make payments to their FSA and HSA. WEX is headquartered in Portland, Maine.

## JURISDICTION AND VENUE

8.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction because:

   a.  the proposed Class is comprised of at least 100 members, § 1332(d)(5)(B);

   b.  at least one member of the proposed class is a citizen of a State other than Oregon, § 1332(d)(2)(A); and

   c.  the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs. §§ 1332(d)(2), (6).

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I.     Health Care Benefits

10.     COBRA allows people to keep their existing group health plan and apply any deductibles they paid while at their job, which prevents the need to start over with a new deductible, find a new plan or change doctors—which is especially important when a person is receiving medical treatment and is faced with losing medical coverage due to a job loss or another qualifying event.

11.     Continuation of medical benefits following termination of employment or another qualifying event for COBRA is imperative. This includes both continued medical coverage with COBRA, and the ability to use FSA and HSA funds for medical expenses.

12.     If an individual experiences a qualifying event and is eligible for COBRA, they may also continue contributing funds to their FSA and HSA.

13.     The FSA is a use-it-or-lose-it account, meaning that an individual may not be able to access their FSA funds if they are terminated. However, continuing an FSA through COBRA allows a former employee to access the full FSA funds after termination. Thus, if a former employee elects and receives COBRA coverage, they are eligible to use their FSA funds through the end of the plan year as if they were still employed.

14.     An HSA is a type of savings account that allows individuals with HSA-eligible health plans to set aside money to pay for health care costs. An HSA is portable and travels with the employee after termination, regardless of whether COBRA coverage is continued. However, an individual can pay COBRA premiums with HSA funds.

15.     FSA and HSA funds can be used for a variety of medical expenses, including ambulance and emergency room treatment, asthma treatment, assisted living, body scans (PET, MRI and CT), cancer screenings, diabetic supplies, elder care, guide dog, hearing aids, insulin supplies, mastectomy, medical monitoring and testing devices (blood pressure monitor and glucose kit), mental health conditions, nursing home care, prenatal care, and prescription drugs, among hundreds of other medical expenses.[1]

/ / /

/ / /

---

[1] https://www.wexinc.com/resources/benefits-toolkit/eligible-expenses/

16.     WEX offers direct pay solutions for former employees making payments for COBRA coverage. WEX also offers direct pay solutions for former employees who are eligible for COBRA and are also contributing funds to their FSA and HSA.

17.     On its website, WEX discusses the continuation of health benefits with COBRA and reimbursement accounts (*e.g.*, FSA and HSA) when an individual elects COBRA coverage:

> COBRA can provide important health insurance security when you've experienced job loss or another qualifying event. And election of COBRA can affect your ability to use the reimbursement accounts in which you were participating prior to your COBRA eligibility....[2]

18.     For FSAs, as WEX describes on its website, when an individual qualifies for COBRA, they may also continue their FSA coverage:

> If you were enrolled in an FSA prior to electing COBRA, you may still be able to tap into your FSA funds…You may also be eligible to re-enroll in an FSA through COBRA, but only through the end of the plan year.
>
> Generally, claims incurred after you become eligible for COBRA are not eligible for reimbursement unless you re-enroll in the FSA through COBRA. However, if your FSA coverage ends, your FSA may have a run-out period that allows you to submit claims you incurred during the plan year for reimbursement, as long as the claims were incurred prior to the event that qualified you for COBRA.

19.     For HSAs, as WEX describes on its website, when an individual's employment is terminated, they may also continue depositing funds into their HSA account or pay their COBRA premiums with their HSA funds:

> HSAs are individually owned accounts, so your HSA will stay with you no matter whether or how you qualify for COBRA. You are still eligible to participate and contribute to an HSA while on COBRA as long as:
>
> - You're enrolled in an HSA-eligible health plan (or high-deductible health plan).
> - You don't have any disqualifying coverage (such as an FSA).

/ / /

---

[2] https://www.wexinc.com/resources/blog/employee-benefits-when-you-elect-cobra/

And, if you are no longer enrolled in an HSA-eligible health plan, you can't contribute to your HSA, but you can still spend your HSA funds at any time. Your HSA funds can be used to pay for COBRA premiums. They can also be used on group health insurance premiums if the covered individual is receiving unemployment compensation under federal or state law.

## II.     Benefits Administration is Big Business for WEX

20.     WEX's benefits segment generates hundreds of millions of dollars each year. Within this segment is WEX's payment processing subsegment, which WEX represents as providing substantial revenues, including the $20.00 junk fee that is the subject of this action.

21.     When consumers make their monthly COBRA premium payments online, or deposit money into their FSA and HSA, WEX tacks on a $20.00 "Online Payment Processing Fee" ("OPP Fee(s)") to all one-time monthly premium payments, regardless of the form of payment (ACH, debit or credit card).

22.     Consumers making one-time monthly premium payments online for these Health Care Benefits are unable to avoid the OPP Fee, regardless of payment method.

23.     Worse yet, throughout the entirety of the COBRA sign up or benefits payment process for deposits into their FSA and HSA, WEX fails to reasonably inform consumers that the OPP Fee will be charged. Reasonable consumers like Plaintiff proceed to checkout without becoming aware of Defendant's OPP Fee.

24.     As described herein, during this process, WEX fails to adequately notify reasonable consumers of the $20.00 OPP Fee or disclose reasonable alternatives to paying the $20.00 OPP Fee.

25.     The $20.00 OPP Fee is a great financial benefit to WEX, at the expense of consumers during a stressful time in their lives.

/ / /

26.     WEX openly boasted about the financial benefits of its OPP Fee in a recent Q1 2025 earnings transcript, when Melissa Smith, Chairman of the Board, President and CEO of WEX, stated that the benefit segment of its business, which includes its COBRA administration services (including deposits into FSAs and HSAs when an individual is receiving COBRA coverage), is "less sensitive to macroeconomic trends than the rest of the company and provides stability to WEX during economic downturns. For example, during the COVID-19 pandemic, we saw the increase in unemployment had a modest impact to account growth, but this was partially offset by the increase in usage of our COBRA product. As a result, account growth remained fairly consistent despite the disruption."

27.     Similarly, in Defendant's Q1 2025 earnings transcript, Jagtar Narula, Chief Financial Officer for WEX, reiterated, "As Melissa discussed earlier, our Benefits segment is more resilient in the near term to economic cycles as changes in employees on benefit programs is typically at least partially replaced by COBRA-related revenue."

28.     Even more, in a Q2 2025 Earnings Report, when referring to its benefits segment, which includes COBRA (and related FSA and HSA deposits), WEX stated that "[w]hile our **interchange revenues** in this segment are a relatively small piece of the total, they **generate a steady revenue stream and a strong-flow through to operating income**." What WEX considers a "small piece" is relative, as its benefits revenue in Q2 2025, alone, was $195.1 million. The interchange revenues that WEX references likely include the OPP Fee that WEX charges to consumers who pay for Health Care Benefits on WEX's platform.

## IV.    The OPP Fee is a Junk Fee That Violates Federal Guidance

29.     WEX's OPP Fee is precisely the type of "junk fee" that has come under government scrutiny in recent years:

Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.[3]

30.    As the Federal Trade Commission said recently in its effort to combat junk fees:

[M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.[4]

31.    In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising," the Federal Trade Commission ("FTC") makes clear that when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to buy—for example, before the consumer "add[s] to shopping cart."[5]

32.    Defendant violates Oregon law and federal guidance by adding the OPP Fee as a line item well after the consumer "add[s] to shopping cart," and by failing to disclose the nature of the OPP Fee.

/ / /

---

[3] The White House, <u>The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition</u>, March 5, 2024, available at https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/#_ftnref3

[4] Federal Trade Commission, <u>FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees</u>, October 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

[5] *See* Fed. Trade Comm'n, .com Disclosures: How to Make Effective Disclosures in Digital Advertising at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf

33.     WEX imposes inadequately disclosed, deceptive and unfair junk fees on consumers and their families who are coerced into believing that they have no choice but to pay them. By this conduct, WEX engineered a "pay junk fees to get health care" scheme. Consumers believe that in order to maintain health coverage they must pay the OPP Fee unilaterally set by Defendant.

## V.     Plaintiff Yamashita's Experience

34.     Plaintiff Paul Yamashita was enrolled in COBRA and continued making payments on his FSA and incurred $20.00 OPP Fees when depositing funds into his FSA on WEX's benefits portal.

35.     From January 2025 to March 2025, Plaintiff Yamashita enrolled in health insurance coverage through COBRA, as administered through WEX. In addition to enrolling in COBRA coverage, the cost of which his employer covered, Plaintiff Yamashita elected to make monthly FSA contributions, depositing $16.32 in December 2024, and $16.32 in January 2025.

36.     For each deposit, Plaintiff Yamashita was charged a $20.00 OPP Fee by WEX, for a total charge of $36.32 for each deposit. The result of which meant that Plaintiff Yamashita paid more in OPP Fees ($40.00) than he deposited into his FSA account ($32.64).

37.     When Plaintiff Yamashita first learned of the OPP Fee, he was not informed of an alternative means of payment to avoid the OPP Fee and believed he had no choice but to pay the OPP Fee.

38.     Plaintiff Yamashita was deceived into paying an unexpected, misleading and unlawful fee without adequate explanation or disclosure, and he could not—and did not—reasonably foresee the OPP Fee.

39.     As a result, Plaintiff Yamashita sustained economic injury by paying the unreasonable and unlawful Opp Fee.

## FED. R. CIV. P. 9(b) ALLEGATIONS

40.    Defendant is in the best position to know what content it placed on its website(s) during the relevant timeframe, and the knowledge it had regarding the OPP Fee and related disclosures, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

41.    **WHO**: Defendant unfairly, deceptively and/or misleadingly imposed the OPP Fee on consumers paying for Health Care Benefits, including premium payments for COBRA, and when consumers who are receiving COBRA coverage make deposits into their FSAs and HSAs.

42.    **WHAT**: Defendant's conduct was, and continues to be, fraudulent because it hid, concealed, obfuscated or otherwise disguised additional charges to consumers paying for Health Care Benefits. Defendant's conduct deceived Plaintiff and Class Members into believing that the OPP Fee is mandatory when paying for Health Care Benefits, when in reality the OPP Fee is untimely disclosed, misleadingly disclosed, excessive and unlawfully charged. At all times relevant to this action, Defendant required Plaintiff and Class Members to make Health Care Benefit payments through its online payment platform where it then imposed the OPP Fee. Defendant charged the OPP Fee to all consumers paying for Health Care Benefits using an electronic payment method. Defendant failed to post, display or otherwise adequately disclose the OPP Fees to recipients during the COBRA sign up or FSA and HSA deposit process. Defendant knew, or should have known, that it failed to adequately disclose the OPP Fee and that this fee— including the excessing amount of the OPP Fee—is material to reasonable consumers, including Plaintiff and Class Members. The OPP Fee is a sham, a classic "junk fee."

43.    **WHEN**: Defendant engaged in these unfair, deceptive or otherwise misleading practices during the putative Class periods and at the time Plaintiff and Class Members paid for

their Health Care Benefits through Defendant's online platform, prior to and at the time Plaintiff and Class Members made claims after realizing the unlawful junk fee, and continuously throughout the applicable Class periods.

44.    **WHERE**: Defendant's unfair and deceptive junk fee was uniformly applied to consumers who paid for Health Care Benefits through Defendant's online platform. Defendant's website failed to adequately explain or otherwise disclose the nature of the OPP Fee being charged.

45.    **HOW**: Defendant hid, obfuscated or otherwise concealed from consumers its imposition of the OPP Fee by describing the junk fee as an "Online Payment Processing Fee" in order to prevent consumers from discovering the charges. Even if consumers were to discover the OPP Fee through their own investigation, Defendant failed to explain or adequately disclose the nature of the OPP Fee or reasonable alternatives to paying this fee, or why it was imposed.

46.    **WHY**: Defendant engages in its unfair and deceptive junk fee scheme in order to induce Plaintiff, Class Members and all reasonable consumers to pay the undisclosed and unlawful OPP Fee, resulting in profits in the millions of dollars.

47.    **INJURY**: Plaintiff and Class Members paid a premium or otherwise paid more for Health Care Benefits when they otherwise would not have absent Defendant's misrepresentations.

## CLASS ALLEGATIONS

48.    Plaintiff brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) on behalf of himself and the members of the following class ("Oregon Class"):

> During the fullest period allowed by law, all persons who were charged the OPP Fee by WEX in relation to Health Care Benefits in the state of Oregon.

49.    The following are excluded from the Class: (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors,

predecessors and any entity in which Defendant or its parents have a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors and assigns of any such excluded persons.

50.     This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

51.     **Numerosity:** Plaintiff does not know the exact size the Class but estimates that it is composed of thousands of persons as WEX represents that it administers Health Care Benefits for more than 350 payroll/benefits administration partners and more than 225 insurance carriers.[6] The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of its claims in a class action rather than in individual actions will benefit the parties and the courts.

52.     **Common Questions Predominate:** This action involves common questions of law and fact to the potential Class because each Class Member's claim derives from the deceptive, unlawful and/or unfair junk fees. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. The questions of law and fact common to the Classes are:

a.     Whether Defendant uniformly charged the OPP Fees to members of the Class;

b.     Whether Defendant's assessment of OPP Fees was unfair, deceptive or unlawful;

---

[6]https://www.wexinc.com/products/employee-benefits/compliance-and-cobra-services/cobra/ (last accessed Sept. 24, 2025).

      c.      Whether Defendant adequately disclosed its imposition of the OPP Fees;

      d.      Whether the OPP Fees would be misleading to the reasonable consumer;

      e.      Whether Defendant's violations of the law were committed knowingly and/or intentionally;

      f.      Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's conduct;

      g.      The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

      h.      Whether Plaintiff and the Classes are entitled to declaratory and injunctive relief and the nature of that relief.

53.    **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein, including charging the deceptive and unlawful OPP fee to consumers making Health Care Benefits payments on WEX's online platform. Further, the damages of each member of the Class were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

54.    **Adequacy of Representation:** Plaintiff will fairly and adequately protect the interests of all Class Members because it is in Plaintiff's best interest to prosecute the claims alleged herein to obtain full compensation due to Plaintiff for the unfair and illegal conduct of which Plaintiff complains. Plaintiff also has no interest that conflicts with, or is antagonistic to, the interests of the Class. Plaintiff retained highly competent and experienced class action attorneys to represent Plaintiff and the interests of the Class. By prevailing on his own claims, Plaintiff will establish Defendant's liability to all members of the Class. Plaintiff and Plaintiff's

counsel have the necessary financial resources to litigate this class action adequately and vigorously. Plaintiff and counsel are aware of their fiduciary responsibilities to the Class and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

55.    **Superiority:** There is no plain, speedy or adequate remedy other than by maintenance of this class action. Individual actions by members of the Class seeking individual remedies will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the Class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

56.    **Injunctive/Declaratory Relief:** The elements of Rule 23(b)(2) are met. Defendant will continue to commit the unlawful practices alleged herein, and Plaintiff and Class Members will continue to be deceived by Defendant's deceptive practices. Defendant acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief, public injunctive relief and corresponding declaratory relief are appropriate respecting the Class as a whole. Injunctive relief, and specifically public injunctive relief, is necessary in this action.

57.    Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

## COUNT I

**OREGON UNLAWFUL TRADE PRACTICES ACT**
**Violation of Oregon Revised Statutes §§ 646.605, *et seq*.**
***(By Plaintiff, individually, and on behalf of the Oregon Class)***

58.     Plaintiff, individually, and on behalf of the Oregon Class, realleges paragraphs 1 through 57 as if fully set forth herein.

59.     The Oregon Unlawful Trade Practices Act (the "UTPA"), ORS §§ 646.605, *et seq*., is Oregon's principal consumer protection statute.

60.     A person violates Oregon's UTPA if they "Employ[] any unconscionable tactic in connection with selling, renting or disposing of real estate, goods or services, or collecting or enforcing an obligation." ORS § 646.607 (1)

61.     Under the UTPA, "a person that suffers an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS [§] 646.608, may bring an individual action in an appropriate court to recover actual damages or statutory damages of $200.00, whichever is greater. The court or the jury may award punitive damages, and the court may provide any equitable relief the court considers necessary or proper." ORS § 646.638(1). The court is also specifically authorized to order injunctive relief "as may be necessary to ensure cessation of unlawful trade practices." ORS 646.636. § 110.

62.     The UTPA also permits a plaintiff to maintain a class action and recover the same remedies on behalf of the class, including statutory damages of $200.00. ORS §§ 646.638(8)(a)-(c).

63.     WEX is a "person," as defined by ORS § 646.605(4).

64.     WEX is engaged in "trade" and "commerce" in Oregon by providing services for the registration of and payment for a Health Care Benefit.

65.     The unlawful methods, acts and practices pled herein were committed in the course of WEX's business. ORS § 646.608(1).

66.     WEX's unlawful methods, acts and practices pled herein were "willful violations" of ORS § 646.608 because WEX knew, or should have known, that its conduct was a violation, as defined by ORS § 646.605(10).

67.     By its conduct and omissions alleged herein, WEX committed unlawful methods, acts or practices, including without limitation:

a.  WEX engaged in other unfair or deceptive conduct in trade or commerce, as described herein. ORS § 646.608(1)(u); ORS § 646.608(4).

b.  WEX engaged in the reckless or knowing use or employment of the unlawful methods, acts or practices alleged herein which have been declared unlawful by ORS § 646.608.

c.  Specifically, WEX advertises, displays and offers to customers that they will pay one price throughout the Health Care Benefit sign up process and in making premium payments, but this is false because WEX applies mandatory OPP Fees at the very end of the online payment process.

68.     WEX misrepresented facts that are material to Plaintiff and Class Members in signing up and paying for Health Care Benefits. WEX's misrepresentations and omissions were knowing, and it intended to, and did, deceive reasonable consumers, including Plaintiff and Class Members.

69.     WEX imposes inadequately disclosed, deceptive and unfair junk fees on consumers and their families who are coerced into believing that they have no choice but to pay them. By this

16

conduct, Defendant engineered a "pay junk fees to get health care" scheme. Consumers believe that in order to maintain health coverage they must they pay the OPP Fee unilaterally set by Defendant.

70.    When consumers make their Health Care Benefit payments online, WEX tacks on a $20.00 OPP Fee to all one-time monthly premium payments, regardless of the form of payment.

71.    Throughout the entirety of the Health Care Benefit sign up and payment process, WEX fails to reasonably inform consumers that the OPP Fee will be charged. Reasonable consumers like Plaintiff and Class Members proceed to checkout without ever becoming aware of the OPP Fee assessed by Defendant.

72.    At checkout, consumers making one-time monthly premium payments online are unable to avoid this OPP Fee, regardless of payment method, and are not reasonably informed of alternative payment methods to avoid the Opp Fee.

73.    Consumers, including Plaintiff and Class Members, are deceived into paying an unexpected, misleading and unlawful OPP Fee without adequate explanation or disclosure, and they could not—and did not—reasonably foresee the OPP Fee.

74.    The existence and nature of the OPP Fee was not reasonably detectible to Plaintiff and Class Members.

75.    With respect to any omissions, WEX at all relevant times had a duty to disclose the information in question because, *inter alia*: (a) WEX had exclusive knowledge of material information that was not known to Plaintiff and Class Members; (b) WEX concealed material information from Plaintiff and Class Members; and/or (c) WEX made partial representations, which were false and misleading absent the omitted information.

/ / /

76.    WEX's misrepresentations and nondisclosures deceive and have a tendency to deceive a reasonable consumer and the general public.

77.    WEX's misrepresentations are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

78.    Defendant engaged in reckless or knowing use or employment of the unlawful methods, acts or practices alleged herein which are declared unlawful by ORS § 646.608.

79.    As a direct, substantial and/or proximate result of WEX's unlawful conduct, Plaintiff and Class Members were harmed, suffered injury-in-fact and suffered ascertainable losses of money or property.

80.    Plaintiff and Class Members reasonably relied on WEX's material misrepresentations and omissions and would not have paid the OPP Fee had they known the truth.

81.    Plaintiff seeks for himself and each member of the Class: (1) the greater of statutory damages of $200.00 or actual damages; (2) punitive damages; (3) appropriate equitable relief; and (4) attorneys' fees and costs. ORS § 646.638(3); ORS § 646.638(8).

82.    A private plaintiff may also seek an injunction "as may be necessary to ensure cessation of unlawful trade practices." ORS § 646.636.

83.    WEX's misconduct, which affects and harms the general public, is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by WEX absent a permanent injunction. Accordingly, Plaintiff seeks an order enjoining WEX from committing the unlawful practices alleged herein.

84.    The balance of the equities favors the entry of permanent injunctive relief against Defendant. Plaintiff, Class Members and the general public will be irreparably harmed absent the

entry of permanent injunctive relief against Defendant. Plaintiff and Oregon Class Members do not have an adequate remedy at law because damages alone will not stop WEX's unlawful OPP Fee and misrepresentations. A permanent injunction against Defendant is in the public interest.

85.    Plaintiff is informed and believes and thereon alleges that Defendant's unlawful behavior is ongoing as of the date of the filing of this Complaint. If not enjoined by order of this Court, Defendant will or may continue to injure Plaintiff and Oregon consumers through the misconduct alleged herein. Absent the entry of a permanent injunction, Defendant's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, it is capable of repetition and is likely to reoccur.

86.    Damages will only address past injuries suffered by Plaintiff and Class Members, but Defendant continues to market the price throughout the Health Care Benefits sign up and payment process, without disclosing the true nature and cost and OPP Fee. Therefore, only injunctive relief can prevent future harm.

87.    Plaintiff and the Class Members seek an order from this Court enjoining WEX from continuing its practice of materially misrepresenting the price to obtain coverage throughout the Health Care Benefits sign up process and in making premium payments, along with the OPP Fee. Plaintiff and the Class request that the Court prohibit Defendant from engaging in these deceptive practices to prevent further harm to consumers.

88.    This action was brought "within one year after the discovery of the unlawful method, act or practice." ORS § 646.638(6). The applicable limitations period is expansive and extends back many years based on the "discovery" rule explicitly provided for in the Oregon UTPA at ORS § 646.638(6). Defendant's unlawful practices have been pervasive in the state of Oregon—

and at the core of its marketing plan—for many years (the exact length of time will be subject to discovery and proof).

89.     Plaintiff and the Class Members did not know, and could not have known, of Defendant's unlawful and misleading acts described herein. As the Oregon Supreme Court has explained, "[i]n general terms, a cause of action does not accrue under the discovery rule until the claim has been discovered or, in the exercise of reasonable care, should have been discovered." The UTPA statute of limitations begins running when a plaintiff knows or should have known of the allegedly unlawful conduct.

90.     Prior to depositing money into his FSA, Plaintiff was not aware of Defendant's junk fee scheme and was not aware that the prices and services Defendant previously advertised to him, and upon which he had relied, were false. Plaintiff is still unsure of the reason for the OPP Fee as it is not adequately disclosed or defined. Thus, it stands to reason that all, or nearly all, other Class Members are still unaware of Defendant's deception.

## COUNT II

### UNJUST ENRICHMENT/QUASI-CONTRACT
*(by Plaintiff, individually, and on behalf of the Oregon Class)*

91.     Plaintiff, individually, and on behalf of the Oregon Class, realleges paragraphs 1 through 57 as if fully set forth herein.

92.     As set forth in this Complaint, Defendant's unfair and unlawful conduct includes, among other things, making materially false and misleading representations about the OPP Fee throughout the Health Care Benefit sign up and payment process. Defendant's acts and business practices offend the established public policy of Oregon, as well as federal law, and there is no public benefit that comes from such false marketing and advertising—only harm.

93.     Defendant misrepresented facts that are material to Plaintiff and Class Members in signing up for Health Care Benefits, when making Health Care Benefit payments and when determining the means of payment. Defendant's misrepresentations were knowing, and it intended to, and did, deceive reasonable consumers, including Plaintiff and Class Members.

94.     Defendant imposes inadequately disclosed, deceptive and unfair junk fees on consumers and their families who are coerced into believing that they have no choice but to pay them. By this conduct, Defendant engineered a "pay junk fees to get health care" scheme. Consumers believe that in order to maintain health coverage they must pay the OPP Fee unilaterally set by Defendant.

95.     When consumers make their monthly Health Care Benefit payments online, WEX tacks on a $20.00 OPP Fee to all one-time monthly payments, regardless of the form of payment.

96.     Throughout the entirety of the Health Care Benefit sign up and payment process, WEX fails to reasonably inform consumers that the OPP Fee will be charged. Reasonable consumers like Plaintiff and Class Members proceed to checkout without ever becoming aware of the OPP Fee assessed by Defendant.

97.     At checkout, consumers making one-time monthly premium payments online are unable to avoid this OPP Fee, regardless of payment method, and are not reasonably informed of alternative payment methods to avoid the Opp Fee.

98.     Consumers, including Plaintiff and Class Members, are deceived into paying an unexpected, misleading and unlawful OPP Fee without adequate explanation or disclosure, and they could not—and did not—reasonably foresee the OPP Fee.

99.     The existence and nature of the OPP Fee was not reasonably detectible to Plaintiff and Class Members.

100.    At all times, Defendant actively, negligently, recklessly and/or intentionally misrepresented the existence and nature of the OPP Fee throughout the Health Care Benefit sign up and payment process and when making premium payments.

101.    While Plaintiff and Class Members were harmed at the time of payment of the OPP Fee, Defendant was unjustly enriched by its misrepresentations and omissions. As a result of Defendant's unlawful, unfair and fraudulent business practices, Plaintiff and Class Members suffered injury.

102.    To Defendant's benefit and enrichment, it knowingly realized substantial revenue from charging the OPP Fee at the expense of, and to the detriment of, Plaintiff and Class Members. Defendant's retention of these benefits violates fundamental principles of justice, equity and good conscience.

103.    Plaintiff and the Class Members conferred significant financial benefits and paid substantial compensation to Defendant to sign up for Health Care Benefits and make benefit payments, which are not as Defendant represents.

104.    Under common law principles of unjust enrichment and quasi-contract, it is inequitable for Defendant to retain the benefits conferred by Plaintiff's and Class Members' overpayments, encompassing the OPP Fee.

/ / /


/ / /


/ / /

105.    As such, Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and the establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

Dated: November 3, 2025                     Respectfully submitted,

                                             s/ Whitney Stark
                                            Whitney Stark, OSB No. 090350
                                            whitney@albiesstark.com
                                            **ALBIES & STARK**
                                            1500 SW First Ave., Suite 1000
                                            Portland, Oregon 97201
                                            Telephone: (503) 308-4770

                                            Rachel Soffin, FL Bar No. 18054
                                            **PEARSON WARSHAW, LLP**
                                            15165 Ventura Boulevard, Suite 400
                                            Sherman Oaks, CA 91403
                                            Telephone: (818) 205-2815
                                            rsoffin@pwfirm.com

                                            Sophia G. Gold
                                            **KALIELGOLD PLLC**
                                            490 43rd Street, No. 122
                                            Oakland, California 94609
                                            Telephone: (202) 350-4783

                                            Melissa S. Weiner
                                            Ryan T. Gott
                                            **PEARSON WARSHAW, LLP**
                                            328 Barry Avenue S., Suite 200
                                            Wayzata, Minnesota 55391
                                            Telephone: (612) 389-0600
                                            Facsimile: (612) 389-0610

                                            *Attorneys for Plaintiff and the Putative Class*